Saul ROZEN, Plaintiff-Respondent,

v.

Paul GRATTAN, Defendant-Appellant.

No. 31270.

St. Louis Court of Appeals.
Missouri.

July 16, 1963.

Rehearing Denied Sept. 4, 1963.

Evans & Dixon, John C. Shepherd, Paul V. Gilbert, Edward F. Downey, St. Louis, for appellant.

Samuel A. Goldblatt, William L. Mason, Jr., James E. McDaniel, St. Louis, for respondent.

BRADY, Commissioner.

The parties will be referred to by their designation in the trial court. The jury returned a verdict for the defendant on his counterclaim and judgment was so entered. Plaintiff's timely motion for new trial was sustained by the trial court and defendant appeals. In view of the circumstances of this appeal, only a brief statement of the factual situation will be necessary.

Both plaintiff's cause of action and defendant's counterclaim arose out of an automobile accident which occurred on February 12, 1960, at the intersection of Hampton Avenue and Arsenal Street in the City of St. Louis, Missouri. Hampton Avenue runs north and south and Arsenal Street runs east and west. Hampton is six lanes wide and Arsenal is four lanes wide. There are electric traffic signals controlling traffic on both Hampton and Arsenal at this intersection. It was a sunny day and the streets were dry. Plaintiff was proceeding south on Hampton Avenue. Defendant was driving west on Arsenal Street. Defendant was driving at twenty to twenty-five miles per hour in the center lane for westbound traffic on Arsenal. As he approached the intersection, the light was in his favor, but as he was about three-fourths across the first northbound lane of Hampton, the light turned amber. His testimony was that he was seventy-five or one hundred feet from the intersection when he first saw the stop sign and that " * * * I looked straight ahead, a chauffeur always looks straight ahead" and that he never saw the plaintiff's automobile until he was "turned around" by the force of the impact. He further testified that he proceeded at the same twenty to twenty-five mile per hour speed at all times. Defendant testified that the front end of his automobile was almost through Hampton when the impact occurred, with his automobile being struck at the front and rear doors on the right side.

Plaintiff's evidence was that as he approached the intersection of Hampton and Arsenal, the light was red and he came to a complete stop in the outside or most westward lane of southbound traffic. He was there about one and one-half minutes, being the first car at the light in his lane. There was an automobile in the lane to his left. He could see the lights both ways and both were working. He looked to his left and saw a car about sixty or seventy feet from him coming west on Arsenal at about twenty-five or thirty miles per hour and about fifty feet from the east curb line of

Hampton. He saw no indication that defendant would not stop. He then looked to his right and straight ahead and did not again see the defendant until the impact occurred some ten feet out into Arsenal. He shifted to first gear as the signal changed to go (the automobile had a standard transmission) and started to move, going about five miles per hour. In plaintiff's own words: "As I proceeded forward, the car left of my side was moving about the same direction, I couldn't saw (sic) what model or what type of car it was, because it was directly—it was moving the same general direction I was going, about the same speed, and all of a sudden, he stopped, and I tried to stop, and I stopped mine, naturally I went forward out a little bit more than he did, because I was watching him stopping first, then I stopped." The point of impact on the plaintiff's automobile was at the left front fender. He heard no horn nor the sound of any brakes being applied and he testified that defendant did not swerve his automobile. The plaintiff produced the witness, Sommer, who testified he was stopped at the light, waiting to go north on Hampton and that he saw the defendant's car approaching; that when the defendant was about twenty-five feet from the intersection and going about thirty miles per hour, the signal changed; that he could tell the defendant was not going to stop and that the car to plaintiff's left stopped after starting to cross the intersection.

The plaintiff submitted his case to the jury on two primary negligence instructions: Instruction No. 1 charging violation of the electric signal, and Instruction No. 2 charging failure to keep a lookout. Defendant's case was submitted to the jury on humanitarian negligence on plaintiff's failing to stop or slow his automobile. Neither party contends that the other failed to make a submissible case and, in fact, both admit the submissibility of the other's case. Both parties suffered personal injuries in addition to their property damage. In his answer, the defendant set forth the affirmative defense of contributory negligence. However, he did not offer an instruction on that issue and none was given.

The jury returned a verdict as follows:

"We, the jury in the above entitled cause, find in favor of the defendant and against the plaintiff on defendant's counterclaim and assess defendant's damages for the aggregate of the items in connection with his personal injuries the sum of Fifteen Hundred ($1,500.00) Dollars; and for the aggregate of the items of damages in connection with the injury to defendant's property, the sum of Five Hundred ($500.00) Dollars; aggregating the total sum of Two Thousand ($2,000.00) Dollars.

"E. W. Campbell, Foreman."

This court has proceeded under Civil Rule 82.12(c), V.A.M.R., to secure the following additional information. There were two other verdict forms given the jury in this case. One of those provided for a verdict in favor of the defendant on plaintiff's cause of action and in favor of the plaintiff on defendant's counterclaim. The other verdict form provided for a verdict for the plaintiff on plaintiff's cause of action, the assessment of his damages, and further provided a finding in favor of the plaintiff on defendant's counterclaim. Both of these verdict forms were returned unmarked in any manner.

The transcript discloses that the jury was polled and there was no objection to the verdict forms as submitted or as returned by the jury. No judgment was ever entered for or against the plaintiff on his cause of action.

Thereafter plaintiff filed his timely after-trial motion which included as one of the allegations of error, paragraph 25, which reads as follows:

"25. The court erred in submitting to the jury the verdict form in which the jury could find in favor of the defendant on defendant's counterclaim, and in which damages were to be assessed

for property damage and personal injury, for the reason that the jury was not required to find in favor of defendant on plaintiff's cause of action in said verdict form, although in the verdict form submitted to the jury wherein the jury might find in favor of plaintiff on plaintiff's cause of action, it was therein required to find in favor of plaintiff on defendant's counterclaim."

Again proceeding under Civil Rule 82.12 (c), V.A.M.R., this court has had reference to the original files in the trial court. These disclose that on April 24th, four days after plaintiff filed his notice of appeal, defendant filed in the trial court a dismissal of his counterclaim without prejudice and at his costs. It further appears that on that same day the trial court ordered dismissal of defendant's counterclaim without prejudice and at defendant's costs. The records of this court disclose that on April 26th, six days after the filing of the notice of appeal and two days after the above dismissal in the trial court, the defendant filed the same dismissal with the Clerk of this court. In both instances, the dismissal was signed by the defendant and his attorney of record.

The trial court granted the plaintiff's motion for new trial on the ground contained in paragraph 25 of that motion as set out earlier herein. Defendant has perfected this appeal contending that the verdict in his favor on his counterclaim submitted on humanitarian negligence necessarily precludes the plaintiff from a recovery upon his cause of action submitted upon two assignments of primary negligence. He also contends that the plaintiff waived any error · when he failed to object to the form of the verdict when it was given to the jury or returned by them.

■ The effect of defendant's attempted voluntary dismissal of his counterclaim without prejudice must first be determined. In Lavignon v. Dietzel, Mo., 34 S.W.2d 92, and in Stocker v. J. C. Penny Co., Mo.App., 338 S.W.2d 339, 1. c. 344, it was held that

a party could dismiss as to one of several claimed to be jointly liable even though the proceedings were then in the appellate court. We think that rule equally applicable to the case at bar. However, regardless of the stage the proceedings have reached, a party does not have an absolute right to dismiss. Smith v. Taylor, Mo.App., 289 S.W.2d 134, 1. c. 140[8]. The vital question is whether the dismissal will prejudicially affect the rights of other parties to the action. 27 C.J.S. Dismissal and Nonsuit § 26, p. 355.

■ Civil Rule 67.04, V.A.M.R., Sec. 510.160, RSMo 1959, V.A.M.S., provides that the dismissal of any counterclaim shall be subject to the same rules as the dismissal of a plaintiff's cause of action. Civil Rule 67.01, V.A.M.R., Sec. 510.130, RSMo 1959, V.A.M.S., provides "A plaintiff shall be allowed to dismiss his action without prejudice at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not afterward. * * *" Civil Rule 67.03, V.A.M.R., Sec. 510.150, RSMo 1959, V.A.M.S., provides that " * * * Any voluntary dismissal other than one which the party is entitled to take without prejudice, and any involuntary dismissal * * * shall be with prejudice * * *." In the instant case, dismissal occurs after the submission of this case to the jury and must be held to be with prejudice. Civil Rules 67.04, 67.03, 67.01, supra; Sections 510.130, 510.150, 510.160, supra; see also Fenton v. Thompson, 352 Mo. 199, 176 S.W.2d 456. Civil Rule 67.03, supra, also provides that a dismissal with prejudice operates as an adjudication on the merits. See Max v. Spaeth, Mo., 349 S.W. 2d 1, foreclosing the defendant's rights to proceed further upon the counterclaim either to collect the judgment for $2,000.00 or to file another action. It is, therefore, clear that insofar as the counterclaim is considered, the plaintiff is not prejudiced by the dismissal.

■ Neither does the defendant's dismissal prejudice the plaintiff as to his own cause of action. A dismissal leaves the

situation as though the counterclaim had never been brought. State ex rel. Burns v. Shain, 297 Mo. 369, 248 S.W. 591[3]. It has the effect of an absolute withdrawal of the claim, 27 C.J.S. Dismissal and Nonsuit § 39, p. 376 et seq. Under these circumstances, the dismissal is beneficial and not prejudicial to the plaintiff's rights as to his own cause of action for it leaves that cause of action unaffected. Accordingly, the dismissal will be entered with prejudice and the only issue before this court is with regard to the trial court's action in granting the plaintiff a new trial on his cause of action.

In his brief, counsel for defendant states, "As the plaintiff's case was submitted entirely on primary negligence, the finding that he was negligent is also a finding of contributory negligence and prevents his recovery." However, in a recent case, the Supreme Court of this state held that where one pleading contributory negligence (as defendant did in the instant case) fails to submit on that issue, it goes out of the case for any purpose. Shepard v. Harris, Mo., 329 S.W.2d 1.

■ The defendant's contentions with regard to plaintiff having waived any objection to this verdict will not be ruled in this opinion. As plaintiff contends, this is a situation where Civil Rule 79.04, V.A. M.R., is particularly applicable. It is therein provided that plain errors affecting substantial rights may be considered upon motion for new trial or on appeal even where defectively preserved. Plaintiff did not object to this verdict form at the trial but he did present this point in his motion for new trial and it was extensively briefed and argued before this court. Certainly nothing affects his rights more substantially than the question he now seeks to present. If the plaintiff's failure to object does not constitute waiver, then the issue is before us from the record. If that failure does constitute waiver, the result is the same for then the issue is before us under the provisions of Civil Rule 79.04, supra. The defendant's contentions with regard to plaintiff's waiver by failure to object will not be ruled.

■ The general rule is that a judgment must dispose of all parties and issues in the case. In Staples v. Dent, Mo.App., 220 S. W.2d 791, l. c. 792[1, 2], the court stated that rule by quoting the following excerpt from 49 C.J.S. Judgments § 43, p. 102:

" 'Ordinarily judgment should not be rendered without disposing of matters raised by defendant's pleadings, such as a counterclaim or cross complaint, *unless the determination of the issue on which the judgment is based is necessarily decisive of the whole case* or the actions have been separated under statutes or court rules permitting such practice.' " (Emphasis supplied.)

The determinative question is whether the verdict for defendant on his counterclaim submitted on a theory of humanitarian negligence necessarily precludes the jury from finding for the plaintiff on his cause of action submitted on a theory of primary negligence even though the wording of that verdict does not contain any express reference to the plaintiff's cause of action.

■ In Staples v. Dent, supra, and in Ragsdale v. Young, Mo.App., 215 S.W.2d 514, it was held that a verdict which did not in specific language refer to the losing party's cause of action nevertheless determined that cause of action where both the petition and the counterclaim were submitted on primary negligence. In Page v. Hamilton, Mo., 329 S.W.2d 758, a verdict for plaintiff who submitted on the humanitarian theory against two defendants and for one defendant, Crowe, on his cross-claim against Hamilton submitted on a theory of primary negligence was allowed to stand against a contention it was inconsistent. However, a careful reading of the opinion will disclose that the decision was limited to the cross-claim situation there present where separate causes of action were joined under the permissive authority

of Sec. 509.460, RSMo 1959, V.A.M.S. In Wilson v. Tolliver, Mo., 305 S.W.2d 423, a recovery for both plaintiff and defendant, where each submitted on humanitarian negligence, was impliedly recognized although the court held that one party failed to make a submissible case. See also Ashbrook v. Willis, 338 Mo. 226, 89 S.W.2d 659, on transfer, 231 Mo.App. 460, 100 S.W.2d 943. As indicated, each of these situations is distinguishable from that presented by the instant case.

However, there are decisions of the courts of this state clearly enunciating the principles which control the decision in the instant case. In Jameson et al. v. Fox, 364 Mo. 237, 260 S.W.2d 507, Jameson, the owner of a truck, and Silkey, the driver thereof, brought their action against Fox seeking recovery of Jameson's property damage and for Silkey's personal injuries. These claims were submitted to the jury upon both humanitarian and primary hypothesization. Fox counterclaimed for property damage and for $15,000.00 for the wrongful death of his wife, for a total of $25,926.50. He submitted on primary negligence. The jury found separate verdicts for each plaintiff for $500.00 and also found for them on defendant's counterclaim. The defendant appealed, seeking a new trial on his counterclaim as well as on plaintiff's petition. The Springfield Court of Appeals transferred the case to the Supreme Court on the theory that the monetary jurisdiction of that court had been exceeded by the amount then in dispute. The Supreme Court held that the amount in dispute was only $1,000.00, the aggregate of the recovery by Jameson and Silkey, stating:

"* * * This is not a case where plaintiffs' claims and defendant's counterclaim can coexist in law. Proof of one necessarily disproves the other, so that there can be no such eventuality as both recovering * * *."

The opinion quotes extensively from a case decided by this court, Hoefel v. Hammel, Mo.App., 228 S.W.2d 402. In that case, the plaintiff, who sought $10,801.26 for personal injuries, submitted on a theory of humanitarian negligence. Defendant counterclaimed seeking $11,809.00 and submitted on primary negligence. The verdict was for defendant on plaintiff's petition and also for defendant on his counterclaim. The trial court granted plaintiff a new trial as to both his petition and the counterclaim. In that case, this court pointed out the issue and stated its solution in these words:

"* * * Indeed, if the two causes of action could exist independently so that there could be both a plaintiff's verdict on plaintiff's cause of action and a defendant's verdict on defendant's counterclaim, the amount now in dispute would comprise the amount sued for on plaintiff's cause of action plus the amount recovered by defendant on his counterclaim, and appellate jurisdiction would be all the more clearly in the Supreme Court. (Citing a case.)

"The solution of our problem lies in the fact that owing to the nature of this case a plaintiff's verdict on plaintiff's cause of action and a defendant's verdict on defendant's counterclaim could not exist together. By his cause of action plaintiff sought to impose complete responsibility for the collision upon defendant, while defendant, by his counterclaim, sought to impose complete responsibility for the collision upon plaintiff. In other words, the situation is one where defendant's counterclaim was not only a counterclaim in the sense that it asked for affirmative relief, but also where the facts upon which the counterclaim was based, if established, constituted a complete defense to plaintiff's cause of action. Bramblett v. Harlow, Mo.App., 75 S.W.2d 626, 633. Upon the question of liability for the accident the proof of either cause of action would at the same time disprove the other. In this situation the issues arising both on plaintiff's cause of action and on defendant's counterclaim were merged in and re-

solved by the verdict in defendant's favor on his counterclaim * * *."

In Stonefield v. Flynn, Mo.App., 347 S.W. 2d 472, the situation differed from Jameson, supra, and Hoefel, supra, only in that plaintiff there submitted on both primary and humanitarian negligence. The defendant counterclaimed submitting primary negligence and seeking $7,500.00 as damages. The verdict was for the plaintiff on his petition in the amount of $14,535.00 and also in his favor on defendant's counterclaim. Defendant sought a new trial on both causes of action. This court held that it had jurisdiction, citing Jameson, supra, and stating that proof of one of the causes of action necessarily disproved the other.

Bramblett v. Harlow et al., Mo.App., 75 S.W.2d 626, is cited in Hoefel v. Hammel, supra, as the basis for the latter decision just as Hoefel v. Hammel, supra, is cited and forms the basis for the decision in Jameson et al. v. Fox, supra. In Bramblett, supra, plaintiff submitted upon humanitarian negligence and upon primary negligence. Defendants submitted upon humanitarian negligence. The jury returned a verdict for the plaintiff on his petition and in his favor on defendant's counterclaim. This court reversed the judgment for a reason not here pertinent and the question arose as to the scope of the remand. That is, whether the new trial granted should include giving defendant another opportunity to recover on his counterclaim as well as another trial on plaintiff's efforts to recover on his petition. This court held, 75 S.W.2d 626, l. c. 633[18], that:

"Here the petition and counterclaim involve but one and the same principal issue, that of whether plaintiff or Mrs. Harlow was ultimately responsible for the collision. Upon the question of negligence, the proof of the one cause of action would obviously disprove the other, and neither is in any sense separate and distinct from the other. In fact, the counterclaim is not only a counterclaim in that it asks for affirma-

tive relief, but the facts upon which it is based, if established, likewise constitute a complete defense to plaintiff's cause of action. Under such circumstances we think that right and justice require that the counterclaim (if asserted by Mrs. Harlow individually) be retried along with plaintiff's cause of action, provided counsel still wish to rely upon it when the new trial is had."

It is true that in Jameson, supra, and in all the cases cited above, the verdict did dispose of all the issues and parties. That is to say, the wording of the verdict returned in the case did expressly encompass both the petition and the counterclaim. It is also true that Jameson, supra, and the other similar cases herein referred to were considered upon a question of jurisdiction. These differences do not rise to the level of distinctions authorizing us to disregard the clear ruling of our Supreme Court contained therein. This ruling was that there could not be a recovery in the same case for one party upon a theory of primary negligence and for another party upon a theory of humanitarian negligence. It follows that the verdict in this case completely disposes of the plaintiff's petition as though a finding for defendant on plaintiff's petition had been expressly stated in that verdict.

■ However, it should be clearly understood that nothing herein is to be interpreted as approving the failure of plaintiff's trial counsel to object to the verdict forms when given to the jury or when returned by them. The same is true of the action of both court and counsel in submitting to the jury verdict forms which did not completely dispose of both the cause of action stated in the petition and that contained within the counterclaim by requiring a specifically spelled out finding on each of them in every one of the verdict forms submitted to the jury. The extension of this litigation could have thereby been easily avoided.

The trial court acted erroneously in setting aside the verdict and judgment for the defendant and in granting plaintiff a new trial. Defendant's dismissal of his counterclaim precludes the reinstatement of the jury's verdict and the judgment entered thereon. The trial court's order granting plaintiff a new trial is reversed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The trial court's order setting aside the verdict and judgment for the defendant and granting plaintiff a new trial is reversed. Defendant's counterclaim is dismissed with prejudice.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.